Laubie, J.
A general demurrer to the petition in- this case was sustained in the court below, and the plaintiff not desiring to plead further, final judgment was rendered and exception taken, and the case is now brought here for revision.
The petition alleges that
“William K. Maber, at the time in question, was the general manager and treasurer, and owner of a majority of the stock of said corporation. That the defendant,contriving to injure said plaintiff, this corporation, and to bring it into public ridicule, and destroy its business, and particularly to ■ destroy that branch of its business •which consisted of doing night-watching in and upon Prospect street, between Perry street and Case avenue, in the city of Cleveland, Ohio, where the plaintiff had a large profitable business, did on or about the first day of March, 1897, falsely and maliciously speak and publish of and concerning the said William K. Maher, then and there well knowing that the said William K. Maher was the general manager and treasurer of said plaintiff, the false and malicious words following, to-wit:
“Maher (meaning the said William K. Maher) is a, bad man, a dangerous character, and under suspicion, and not to be trusted. There was a barn burned up here, and he is under suspicion of setting it on fire. Then and there meaning that the said William K. Maher was a bad and *48 dangerous character, and that he had been, and is guilty of the crime of arson, and was regarded as guilty of said crime, in.so much that many of the persons, neighbors and citizens to whom said defendant stated and published said false and malicious words and to whom the innocence and integrity of William K, Maher were unknown, and knowing the connection of said Maher with this plaintiff, have, by reason of the speaking and publishing of said false, malicious, and defamatory words, believed said Maher to have been, and to be a bad and dangerous character, and guilty of arson, and the police company to be entirely unworthy of confidence and patronage (from their knowledge of Maher’s connection with said company). And they have, by reason thereof, since that time, wholly refused to patronize or have any business transactions with this plaintiff as they were accustomed to have prior to said time; and that by reason thereof, said company has lost its large and profitable business of night-watching on Prospect street in the city of Cleveland, and has suffered a falling off of its business, and has been injured in its prospects and good will. And plaintiff says that by reason of the premises it has been injured to its damage in the sum of ten thousand dollars.”
Í There is no direct allegation of any words spoken of' Maher in his character of general manager,treasurer or servant of this company, or of the nature or character of his employment; yet,if this were a suit upon the part of Maher himself against Brayton, there could be no question but that the suit might be maintained, and maintained, we think, as spoken of him in bis character as manager of' this institution,, and of his employment as such manager.
It is not necessary that the words spoken, should expressly refer to,or characterize by name in any way,that employment or business. It is sufficient if, in connection with the subject-matter as explained by the innuendoes, the words spoken, must, of necessity, refer to him in his character of servant or officer or touch him in his trade, office or profession”:
*49 . His special office, profession or trade need not be expressly referred to, if the charge made be such as must •necessarily affect it.” “And in determining this question, regard must be had to the rank, and position of the party, and to the mental and moral requirements of the office he holds or to the trade or profession he follows.” New on D. S. L. 174. It is apparent to us that these words, thus •expressed, must, of necessity,have injuriously affected Mr. Maher in his employment as manager of special police guarding the property of individuals at night.
The point here, however, is whether or not the plaintiff, the employer of Mr. Maher, can maintain the action —and this is a novel proposition, in this state at least.
Undoubtedly, a general manager and treasurer of a corporation is a servant of the corporation. Whether called manager, treasurer or agent,he is a servant of the corporation. And, if, therefore, a master may maintain an action against a slanderer of his servant, for injury to his business, then that principle ought to apply to a master like this, although that master may be a corporation, and not an individual.
“So, too, an action lies for preventing a servant from laboring for his employer by menaces and threats, or by slandering and libelling him so that the master is deprived of his services”; (W. on M. & S. 471 §239;) “or, if in any other way, the natural consequence of the words has been to injure the master in the way of his trade”, N. on D. S. & L 375; And “whether the words be actionable in themselves or not”. Ibid. In Ashley v. Harrison, Peake, 94; 1 Esp., 48, it was held “that a master could not recover for an injury to his business, resulting from a slander or libel against one of his performers, whereby she was deterred from appearing on the stage, upon the ground that the damage is too remote, but the doctrine of 'this case has been denied by the High Court of Justice in *50 a case recently decided, and a contrary doctrine announced. Thus, in Riding v. Smith (see Albany Law Journal, vol., 13, p. 441), the plaintiff, a tradesman, brought an action against the defendant for slanderous words spoken of the plaintiff’s assistant in his business (in this case his wife), whereby his business had fallen off and been injured. The defendant charged the wife, with adultery. The , speaking of the words, and the consequent special damage having been proved, the court held that a recovery could be had upon two grounds, one of which was that the falling off of the plaintiff’s business was the natural consequence of the publication of the words, and the good sense of this doctrine will commend it as an authority. Tnere never was any good reason given, why, when a master had a temporal loss from a slander or libel published against his servant, he should not recover for it was well as for a loss resulting from the personal injury inflicted upon his person, or when he had been deprived of his services by threats.” W. on M. & S. 471,
The same doctrine has been held in a number of similar English cases, cited in N. on D. S. & L., p. 166,173, 378.
We see no distinction, and can make none, between the case at bar and the cases I have referred to.
The case we have here seems to be stronger than any one I have cited. Here Maher was the general manager of a corporation,and (he business of that corporation largely was the guarding of private property at night —the homes, and incidentally the lives of citizens. Therefore not only as a corporation, but as a public beniflcence under his management, to be successful and inspire confidence, it would neccessarily have to be possessed of a good reputation; and~the clear weight of the(authorities is, and rightfully^is we think, that a corporation like an individual may be injured in its reputation as well as in its business. It had a reputation to sustain, at least ofbaving, *51 honest men in its employment and to conduct its business to whom people could safely entrust their property, and when it was publicly charged as against the general manager of the association,that he was “a bad man, a dangerous character, and under suspicion, and not to be trusted, that he was accused and supposed to be guilty of setting fire to a barn” — when that was said of him publicly.it must naturally and necessarily injuriously affect the corporation itself, its reputation and its business, No one thereafter would be so free to trust the corporation or its servants.
T. H. Dulap, for Plaintiff,
With these views, we think the court below erred in sustaining the demurrer to the petition.
The judgment of the court below will be reversed, and case remanded.